```
              UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                  NORTHWESTERN DIVISION


STEVEN LEE FULMER,              *

          Plaintiff,            *    3:17-cv-938-MHH

     vs.                        *    October 8, 2018
                                       1:30 p.m.
PCH HOTELS AND RESORTS, INC.,   *
                                     Birmingham, Alabama
          Defendant.            *


* * * * * * * * * * * * * * * * * * * * * * * * *

           TRANSCRIPT OF TELEPHONE CONFERENCE
     BEFORE THE HONORABLE MADELINE HUGHES HAIKALA
              UNITED STATES DISTRICT JUDGE

* * * * * * * * * * * * * * * * * * * * * * * * *


For the Plaintiff:  Alicia Kay Haynes
(VIA TELEPHONE)     Brian O. Noble


For the Defendant:  David M. Smith
(VIA TELEPHONE)


Court Reporter:     Leah S. Turner, RMR, CRR
```

1           This cause came to be heard and was heard on
2   the 8th day of October 2019, before the Honorable Madeline
3   Hughes Haikala, United States District Judge, holding court
4   for United States District Court, Northern District of
5   Alabama, Northwestern Division, in Birmingham, Alabama.
6           Proceedings continued as follows:
7                       P R O C E E D I N G S
8           THE COURT:  Good afternoon.  We are here in case
9   17-938 for a telephone conversation regarding the pending
10  motion for sanctions in this matter.
11          I am having trouble with my computer.  I can't get
12  my docket sheet to open, but I looked at it a little bit ago
13  and I was curious procedurally what prompted the motion at
14  this point in the litigation, Ms. Haynes.
15          MR. NOBLE:  Your Honor, this is Brian Noble.
16  Alicia is here with me.  I'm attorney of record as well.
17  Alicia had mouth surgery yesterday, so she will chime in to
18  correct me when I'm wrong on something, I'm sure.
19          THE COURT:  Okay, sure.
20          MR. NOBLE:  I'm not a bad one to speak because I
21  actually drafted the motion; I was a proponent for the
22  motion.  I just joined the firm about two months ago, so I
23  wasn't here when all this was happening.  And what I
24  drafted -- I felt like it was a clear violation of Rule
25  30(d).  It's very difficult to read through these

1  depositions with all of the interruptions.
2        I have been doing this about nine years.  I have
3  never seen it look quite that bad.  So I spoke up about
4  drafting the motion and filing it.  It's something we do
5  take serious.  And that explains the timing, I hope.
6        THE COURT:  Hold on one minute, please.
7        All right.  Mr. Noble, I apologize.  I just ducked
8  in my office to look at the docket report.  Again, a little
9  more background, please, Mr. Noble, to help me understand
10 the timing of this motion.
11       The Court has before it a motion for summary
12 judgment.  The defendants have submitted a brief in support
13 of the motion for summary judgment.  The plaintiff has
14 responded. The Court has allowed additional pages for the
15 anticipated reply brief.  So given the fact that the
16 plaintiff already has responded to the motion for summary
17 judgment -- again, I'm just trying to understand what
18 prompted the motion for sanctions.
19       I understand your explanation about the fact that
20 you haven't been at the firm for very long, but I'm just
21 curious to know whether there's something that triggered the
22 motion at this juncture.
23       MR. NOBLE:  Sure, Your Honor. Well, what triggered
24 it was I was deeply in the record and I was working on this,
25 and you'll see it was actually filed well before the reply

1   brief was due from defendant.  There was no tactics here and
2   there's no objection if he needs to respond after summary
3   judgment responses are due.  There's certainly no tactics
4   here.
5           It's just this is an extensive record and I was in
6   it; and once I got a look at it, I felt like it was a clear
7   violation of the rule.  That's not something that we would
8   like to see going forward in depositions, and so rather than
9   go back and refresh myself on the record some other time or
10  just let it go, which was really the -- you know, letting it
11  go, but rather than that, while I was already in it, it was
12  time to go ahead and draft the motion if we were going to do
13  it.  And we only had 50 pages to respond and we barely made
14  it with our 50 pages to respond to the motion for summary
15  judgment.  So that's not something that I could point out in
16  footnotes or something along those lines in the response, so
17  I just brought it as a separate motion.
18          THE COURT:  Okay.  That's helpful.  Thank you.
19          All right.  First of all, I went back and read the
20  transcript of the conversation that we had earlier this year
21  about discovery and there was a fair amount of discussion in
22  that proceeding about the hurdles that the parties felt
23  opposing counsel were erecting to their ability to develop
24  the information they were seeking to develop in discovery.
25  So I learned a little bit about the issues that are now

framed for the Court's consideration in this motion for sanctions.

Let me back up and ask this question.  When we spoke last, we spoke about the possibility of mediation in this case, and I, again, glanced through the docket sheet and I didn't see any sort of report of a mediation session.  So can you all just refresh my memory on that, please.  Did you all mediate the case?

MR. SMITH:  Your Honor, this is David Smith.  Just as disclosure, I'm in a conference room at the EEOC.  I'm in private, but I'm not in my own office.

We did have a mediation.  Our assessment of it is that plaintiff did not participate in good faith in any way, shape, or form.  It failed.  And we went back to the schedule for summary judgment.

THE COURT:  Can you just tell me, please, Mr. Smith, roughly when that mediation was.

MR. SMITH:  I'm sorry.  I don't have my calendar.  I believe it was in March, but I cannot say.

THE COURT:  All right.  That's helpful.  Thank you.

MR. NOBLE:  Your Honor, I have a note from Alicia on this wonderful pink notepad here it says March, the mediation was in March, and that our client came all the way there from Florence with his wife.

THE COURT:  All right.  Let me start with a

1  question.  I started to read the transcript of the 30(b)(6)
2  witness, and I read in the motion the contention that that
3  individual was allowed to testify as a 30(b)(6)
4  representative, but then when Ms. Haynes wanted to
5  essentially change hats and have him give testimony about
6  his individual knowledge as relevant to the claims in this
7  case, counsel for the defendant instructed him not to
8  answer.  I saw some of that conversation.  Is that what
9  happened?
10             MR. SMITH:  Your Honor, I assume you're asking me?
11             THE COURT:  Yes, Mr. Smith.
12             MR. SMITH:  I have not gotten that deep in my
13  preparation to go back to that particular transcript, but
14  let me tell you what I do know just off the top of my head
15  about that.
16             Justin Lowe was the 30(b)(6) about compensation and
17  benefits.  He did not work at the Shoals during any of the
18  relevant period for which discovery was allowed in this
19  case.  He came there well after Mr. Fulmer had left the
20  Shoals and had worked at another property, the
21  Auburn-Opelika property, before.  So he is in an HR capacity
22  at both places, but he wasn't at the Shoals during any of
23  the Fulmer case.
24             THE COURT:  All right.  Was he the only 30(b)(6)
25  representative?

1           MR. SMITH:  No, Your Honor.  The other was Larry
2  Bowser, the general manager, and he had testified back in
3  June.
4           THE COURT:  I think that's the individual whose
5  testimony I had in mind.
6           You received two deposition notices for Mr. Bowser,
7  one for a 30(b)(6) deposition and one for his individual
8  testimony.  Is that correct?
9           MR. SMITH:  I'm not sure about that detail, whether
10 we got two separate notices or not.
11          THE COURT:  Well, do you recall whether you
12 instructed Mr. Bowser once the 30(b)(6) deposition was over
13 that you all were done with his deposition testimony?
14          MR. SMITH:  I did take the position with Alicia
15 that she should not expect to have two separate seven-hour
16 sessions with Mr. Bowser where -- during the 30(b)(6) part
17 she had spent hours on his personal life and personal
18 experience and things that were not on the 30(b)(6) list.
19 You know, we didn't get to a conclusion on that.
20          If I may, the excerpt in the motion for sanctions
21 from Mr. Bowser's deposition that is the lead example in the
22 motion, first alleged interference, is about -- this is in
23 June of 2018 when that deposition is being taken.  I had
24 taken the position in the responses to written discovery
25 that we regarded the mold issue that arose from the

1  construction of the hotel to be outside the scope of
2  appropriate discovery in the case.
3         So on the record and even in the excerpt in the
4  motion I said you can make enough of a record so that you
5  can go to the Judge, but our position is that we're not
6  going to do discovery on the mold issue.  And so there was
7  no motion forthcoming on that, and when we were before you
8  on October 25th, we did address that issue and you sustained
9  our objection on the scope of discovery including mold.  And
10 so that was the main point of that excerpt, was that I was
11 saying we're not going to agree that he can go into
12 testimony about the mold, but I'm going to let you make
13 enough of a record so that you can go to the Judge.  And
14 then we were sustained later on that being beyond the scope
15 of discovery.
16         THE COURT:  All right.  How do the parties suggest
17 that we proceed with respect to this motion?
18         MR. NOBLE:  Your Honor, I would like -- it's the
19 plaintiff's position that we would like, after the summary
20 judgment, to reply, and that's fine.  I would like to see
21 Mr. Smith or someone at that firm explain why this is not a
22 violation of these rules, because I think it is.  I think
23 it's a clear violation.
24         We have no intention here of trying to delay or
25 disrupt his response to the summary judgment.  I understand

1 that.

2 THE COURT: All right. Is there any reason why the
3 Court has to take this up before the Court resolves the
4 summary judgment motion?

5 MR. NOBLE: No, Your Honor.

6 THE COURT: All right. Then I'm going to focus on
7 the merits because I think that serves the parties'
8 interests, and we will see where we end up on the merits,
9 and then we will decide what to do with this motion for
10 sanctions.

11 Mr. Smith, are you comfortable with that approach?
12 Because I know you had asked for an opportunity to file a
13 response to the motion for sanctions.

14 MR. SMITH: Well, I'm not sure what to say about it
15 all. I appreciate you convening this call. But the motion
16 for sanctions in addition to focusing on me personally
17 requests as a sanction that we can't use the deposition
18 transcripts in pursuing our summary judgment. And
19 notwithstanding how unmeritorious the motion is and how
20 unfairly harsh such a sanction would be -- and I'm prepared
21 today to talk a good bit more about that, about how ironic
22 it is and how unfair it would be. But, you know, in that
23 scenario are we saying that we would complete the summary
24 judgment process and then have the prospect of it being set
25 aside by sanction?

1                These deposition transcripts -- if you recall in
2      the January 7th hearing, what Ms. Haynes said was that,
3      among other things, on page 24 of that transcript, she said
4      that she opposed PCH now being able to use these witnesses
5      and produce some affidavit or declaration that's going to be
6      used as a means of granting summary judgment.  We didn't do
7      that.  We didn't -- to use another of her phrases --
8      elongate what the witness had to say by bringing in
9      affidavits which would have been so much cleaner and
10     straightforward.
11               What we've done is we've only used the depositions
12     that she took.  We haven't used questioning by me of these
13     witnesses.  I didn't ask any questions -- that I recall.  I
14     could be wrong that there's a question somewhere.  But as a
15     general proposition, I didn't ask any questions of any of
16     these witnesses.  We didn't file any affidavit.  Using
17     Ms. Haynes' phrase from January 7th, we didn't take
18     advantage of inserting an affidavit on an area that they
19     didn't cover. So the whole summary judgment record is based
20     on the Fulmer deposition and what witnesses told Ms. Haynes
21     in their testimony.
22               At page 22, Ms. Haynes said that the defendant
23     should not be allowed to use any type of affidavit or
24     declaration or somehow elongate their testimony when she was
25     limited.  If we had done that, there might be something to

1  talk about.  But on the flip side, in the emails that I
2  submitted to Your Honor yesterday, as you see among the many
3  statements contained there, I asked Ms. Haynes to tell me
4  if -- again, I repeated it the first week in December; tell
5  me any witness you may use as a trial witness or as an
6  affiant, and she said she would, and she didn't do that
7  until the disclosures that she served during the week of
8  December 17th, while I'm going from Florence to Decatur to
9  Montgomery, putting up nine witnesses in the five workdays
10 before Christmas.
11         And now in her opposition to my summary judgment,
12 she files an affidavit from the Auburn-Opelika person that
13 she asked to do discovery on, if you recall that back in
14 October, and we produced all those records.  But she didn't
15 use the records with her affidavit.  She just used his
16 testimony.  So while I only used the depositions, she not
17 only got nine depositions that week, she didn't notify me in
18 any timely way where I could take the deposition; and now
19 uses an affidavit from that witness in opposition to summary
20 judgment.
21         Now, obviously in the context of our reply brief,
22 we're going to evaluate and determine whether we should file
23 a motion to strike the affidavit, but that's emblematic of
24 the way this all went in December.
25         You know, if she is going to assert an affidavit

1  where she prevented me from having any opportunity within
2  the discovery time frame of deposing them, then either that
3  affidavit should come out or the records that we produced to
4  her under Your Honor's directive from October 25th should be
5  in the record.
6          The whole story about December 17th to the 21st,
7  Your Honor, has to be in the context of the agreement we had
8  reached.  It was not about seven hours of deposition.  You
9  directed us to work together in good faith to get the
10 discovery done, and I know that if there's an opportunity to
11 look at the emails that I sent you, I fell all over myself
12 doing everything I could to try and make those depositions
13 work.
14         But on the second day, instead of staying on her
15 schedule, Ms. Haynes, who had allocated three hours to Jared
16 Emerson, had an aggregate of eight hours, 22 minutes on that
17 deposition.  Now, not all that was on the record, but that's
18 the start to finish time frame, and the time estimates we
19 were using were the aggregate time.  So the ups and downs of
20 that week were not of my making, and her --
21         THE COURT:  Hold on a second, Mr. Smith, because I
22 did read those emails, and in the course of those
23 depositions, there's discussion about you wanting to change
24 the order of certain witnesses; a witness had a medical
25 situation and was trying to get to a doctor's appointment,

1   witnesses were trying to get to a Christmas party.  And so
2   on your end you were asking for accommodations, and
3   Ms. Haynes was responding explaining that she had prepared
4   for the depositions in a particular order, that that was
5   your agreement.
6          So there was some back and forth on both sides, if
7   we give a full recitation of those emails.
8          MR. SMITH:  I fully acknowledge that Mr. Emerson
9   needed to be alternated with Mr. Lingle.  That was moving
10  two depositions out of nine that were set, respectively, for
11  an estimated two hours and three hours.  And I did.  I did
12  ask for that accommodation.  The accommodations I gave back
13  far exceed that, we respectfully submit.
14         Now, I'm not professing to have been perfect that
15  week, but when the plaintiff did not take but one deposition
16  on that Tuesday, where there were three set the next day in
17  Decatur, we brought those two witnesses from Florence to
18  Decatur to make them available.  It was not we that had
19  departed from the schedule in terms of the length of
20  deposition.
21         And, look, this is going to be a difficult thing
22  for me to demonstrate as a matter of certainty where -- my
23  experience with counsel for the plaintiff is that she is
24  willing to go into the evening, and the quality of the
25  questioning is deteriorating and the witness is getting

1  tired.
2          We had been through this with Mr. Dowling back in
3  June.  That's another example that is cited in this.  And
4  what happened on the Dowling deposition on June 7th was that
5  we went to lunch after Bowser ended; we went to lunch and
6  the plan was between about 2:00 and 5:00 Dowling would get
7  done.
8          Pretty soon after we got back from lunch, counsel
9  for the plaintiff said that she thought it was going to have
10 to go to 6:00.  So we get started and we get under way and
11 we accommodate that, and say okay, we're here; we're ready;
12 we want to get this witness done and back home, which was a
13 couple hours away.  So we get to 6:00 and she is thinking
14 that -- she says that she thinks she needs up to one to two
15 more hours, and we're unhappy about that.  But between 6:00
16 and 8:00, there was not sound effort at moving along with
17 the questioning.  And 8:00, as her motion talks about, we
18 stop the deposition.  8 p.m.; 8 p.m. we stop the deposition.
19 And at that point she was on item 11 of his report which had
20 30 items.  So she was nowhere close to what she had in mind
21 doing that evening.
22         So it was in that context that I was seeking with
23 the discovery deadline being the 24th -- I was looking to
24 establish a schedule and try to stay with it.  Yes, I did
25 ask to move Lingle and Emerson, and I deeply regret that.  I

1  should have told him you don't go to the Christmas party;
2  you don't go pick up your wife; you don't go to the
3  Christmas party; tough.  But I was trying to manage a lot of
4  people and there was nothing -- it's not like I got in the
5  depositions and started asking questions or got my own
6  agenda covered.
7          I'm sorry.  I'm terribly distressed about --
8  plaintiff's counsel had the opportunity in January to say I
9  need to take two witnesses for another two hours, and I
10 wouldn't have been happy about that but we address it.  But
11 this --
12         THE COURT:  All right.  Mr. Smith, I tell you what.
13 Let me just ask you to take a break for a minute, please.
14         Mr. Noble, in the plaintiff's response to the
15 pending motion for summary judgment, I have not reviewed it,
16 so can you please tell me in that response did the plaintiff
17 ask for the opportunity to conduct additional discovery?
18         MR. NOBLE:  No, Your Honor, and we're not asking
19 for it now.
20         THE COURT:  Then I'm going to consider the motion
21 for sanctions somewhere down the road.  We're going to get
22 through the merits issue on the motion for summary judgment
23 first.
24         Clearly, because I'm going to consider the evidence
25 that is in the record, if there is a sanction, it will not

1  be disallowing the deposition transcripts as evidence in
2  this matter, particularly with respect to the motion for
3  summary judgment.
4         I believe there are ways to address any alleged
5  inadequacy in the plaintiff's ability to respond to the
6  motion for summary judgment, and the lack of that request
7  suggests to the Court that if there is a need for sanctions,
8  there are other means of addressing those.
9         So we're going to table the motion for sanctions
10 right now, we're going to get through the motion for summary
11 judgment, and then we will see where the case stands after
12 we resolve the motion for summary judgment.
13        Mr. Smith, you mentioned that you are contemplating
14 filing a motion to strike an affidavit.  Just a friendly
15 reminder that under the revised rules, motions to strike no
16 longer are the appropriate ways procedurally to deal with
17 evidentiary issues at the summary judgment stage.  A party
18 can object to evidence that has been offered and state in a
19 summary judgment brief the basis for that objection.  So if
20 you would please keep that in mind as you complete your
21 response.
22        MR. SMITH:  Thank you, Your Honor.  And I
23 appreciate what you just said.  I'm dealing with a page
24 limitation.  And so articulating all those objections where
25 that's -- I will just have to do the best I can to manage

1  that within the page limitation.
2           THE COURT:  Understood.  All right.  Is there
3  anything else we need to discuss today?
4           MR. NOBLE:  No, Your Honor.  Thank you very much
5  for your time and consideration.
6           MR. SMITH:  Your Honor, this is David again.  I'm
7  sorry.  I have devoted tens of hours to this motion for
8  sanctions and preparing outlines and trying to make sure
9  that I am prepared to do whatever I needed to do, whatever I
10 was directed to do today, and I hate to even contemplate
11 asking for more time beyond the 17th on this summary
12 judgment response.  I'm not asking for it now, but can I at
13 least have leave to request more days next week if I'm in a
14 bad position on this?
15          THE COURT:  Sure.
16          MR. SMITH:  I'm going to do my very best to file
17 something as early in the day on the 17th as I can, but my
18 teammate on this file is out on maternity leave, which is
19 wonderful, but it means I'm juggling more than I want to.
20          THE COURT:  Well, I'm always willing to entertain a
21 motion from any party, and I have no idea what the motion
22 would say, no idea how the Court would rule, but I'm not
23 going to hamstring people in terms of telling them they
24 can't file motions.
25          MR. SMITH:  I'm just talking about four or five

```
 1  business days if I had to have a little bit more.  That's
 2  all I'm talking about.
 3              THE COURT:  Again, I'm not making any projections.
 4  I don't know what a motion will look like, but I'm just
 5  telling all of you generally that you have the opportunity
 6  to make whatever record you want to make and we will just
 7  see how things unfold.
 8              All right.  Thank you for your time this afternoon.
 9  You all take care.
10              (End of proceedings.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

<u>C E R T I F I C A T I O N</u>

    I hereby certify that the foregoing transcript in the above-styled cause is true and accurate.

*[Signature: Leah S. Turner]*

**Leah S. Turner, RMR, CRR**
**Federal Official Court Reporter**